United States District Court
Eastern District of Michigan
Southern Division



United States of America,

       Plaintiff,

                              Case No. 23-20431

v.

                              Hon. David M. Lawson

Samer Youssef,

       Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Samer Youssef, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.   Counts of Conviction

The defendant will plead guilty to Count 1 and Count 20 of the Indictment. Count 1 charges the defendant with Conspiracy to Commit Health Card Fraud under 18 U.S.C. § 1349. Count 20 charges the defendant with Money Laundering under 18 U.S.C. § 1957.

## 2.   Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

ORIGINAL

| Count 1 | Term of imprisonment: | 10 years |
|---|---|---|
| | Fine: | $250,000, or twice the gain or loss (18 U.S.C. § 3571(d) |
| | Term of supervised release: | 3 years |
| Count 20 | Term of imprisonment: | 10 years |
| | Fine: | $250,000 or not more than twice the amount of the criminally derived property involved in the transaction |
| | Term of supervised release: | 3 years |

## 3.   Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Counts 2-19 and 21-28 of the Indictment.

## 4.   Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the

Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the indictment or factual basis.

## 5.   Elements of Count of Conviction

The elements of Count 1 are:

First, that two or more persons conspired, or agreed, to commit the crime of health care fraud.

Second, that the defendant knowingly and voluntarily joined the conspiracy.

The elements of Count 20 are:

First, that the defendant knowingly engaged in a monetary transaction.

Second, that the monetary transaction was of a value greater than $10,000.

Third, that the monetary transaction involved criminally derived property from specified unlawful activity, namely, health care fraud.

Fourth, that the defendant knew that the monetary transaction involved criminally derived property.

Fifth, that the monetary transaction took place within the United States.

## 6.   Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Count 1. Beginning in 2016, and continuing through about December 2021, in the Eastern District of Michigan, Samer Youssef willfully conspired with Houda Bazzi, Daoud Faraj, and others, to defraud Medicare and Blue Care Network, health care benefit programs affecting commerce as defined in 18 United States Code § 24(b), of money by means of materially false representations, in connection with the delivery of and payment for prescription medications.

At all relevant times, Samer Youssef was a licensed pharmacist and owner of several business entities, including Somerset Specialty Pharmacy. Houda Bazzi worked for Youssef's businesses. Faraj was a licensed medical doctor. Also, "specialty" medications are prescription drugs that, for example, treat a less common health condition or have less common characteristics, such as requiring special handling, special administration, or additional monitoring, and at times can be high-cost medications. "Orphan drugs" are a type of "specialty" medication and are defined in the Orphan Drug Act as one intended to treat, prevent or diagnose a "rare disease or condition." 21 U.S.C. § 360bb(a)(2).

As part of the conspiracy, Samer Youssef and Houda Bazzi identified prescription specialty medications, orphan drugs, and other

prescription medications that could be sold at a profit. The prescription medications included, for example, Firazyr, Trikafta, and Augabio. Samer Youssef and Houda Bazzi then worked with Faraj and other doctors to write medically unnecessary prescriptions for the specialty medication or orphan drug.

The doctors, including Faraj, wrote medically unnecessary prescriptions in the names of "patients" who had no medical need for the medications. The "patients" included (1) family and/or friends of Youssef, Bazzi, or Faraj, (2) existing patients of Faraj or other doctors, (3) and Youssef and Bazzi themselves. Youssef, Bazzi, Faraj, and other doctors worked to complete the necessary paperwork and send the medically unnecessary prescriptions to a specialty pharmacy that filled the prescription for the specialty medication or orphan drug. The specialty pharmacy billed Medicare or BCN to dispense the specialty medication or orphan drug.

In addition to the prescription, the specialty pharmacy required paperwork and other documentation to fill the prescription, documentation that included the patient's name and purported address, purported telephone number, insurance information, and other

purported contact information, as well as the prescribing physicians' name, address, telephone number, and other contact information. Youssef, Faraj, and Bazzi conspired to include in that documentation a purported patient address that caused the specialty pharmacy to send the specialty medication or orphan drug to an address controlled by Youssef, Bazzi, or Faraj, rather than to the patient's actual address. Youssef, Faraj, and Bazzi also conspired to include in the documentation submitted to the specialty pharmacy a purported telephone number or other contact information that caused the specialty pharmacy to communicate with Youssef or Bazzi about the prescription, and not communicate with the "patient."

When the specialty medications and orphan drugs arrived, Youssef and Bazzi, via their business entities including SMA Patient Care, LLC, Somerset Specialty Pharmacy, and Spring Bio Solution, arranged to ship the medications to their customers, who were domestic and international companies. Youssef and Bazzi's business entities sold the medications for millions of dollars.

Youssef and Bazzi paid Faraj and other doctors for their roles in the conspiracy. In executing this scheme, Youssef, Faraj, Bazzi, and other

doctors submitted or caused the submission of claims to Medicare and BCN for prescription medications that were not medically necessary. Medicare paid $5,616,327.41 for prescriptions Faraj and other doctors issued as part of this scheme, and BCN paid $26,931.11 for prescriptions Faraj issued as part of this scheme.

Count 20. From 2016 to 2021, Youssef profited from his involvement in a specified unlawful activity, namely, health care fraud. On April 14, 2020, Youssef knowingly engaged in a monetary transaction of approximately $395,000 by transferring funds from Somerset Specialty Pharmacy to Escrow and Title Services, for the purchase of a residence. Youssef knew that that monetary transaction involved proceeds from Youssef's health care fraud scheme, and the monetary transaction took place within the United States.

## 7.   Advice of Rights

The defendant has read the indictment, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.   The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.   The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.   The right to confront and cross-examine adverse witnesses at trial;

F.   The right to testify or not to testify at trial, whichever the defendant chooses;

G.   If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.   The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I.   The right to compel the attendance of witnesses at trial.

**8.   Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote,

right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

## 9.   Defendant's Guideline Range

### A.   Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B.   Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the

government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.   Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply to the defendant's guideline calculation on Counts 1 and 20:

- USSG 2B1.1(a)(2): base offense level with 10 year statutory maximum.
- USSG 2B1.1(b)(1)(J): loss amount of $5,663,406.31 (more than $3.5 million and less than $9.5 million).

- USSG 2B1.1(b)(7): convicted of a federal health care offense involving a government health care program with loss of more than $1 million.
- USSG 3B1.3: abuse of position of trust.
- USSG 2S1.1(a)(2): laundering of monetary instruments (about $395,000).

The parties have no other joint recommendations as to the defendant's guideline calculation.

### D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing purposes.

### E.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that

guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 10. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

#### 2. No Right to Withdraw

The government's recommendation in paragraph 10.B.1 is not binding on the Court. The defendant understands that he will have no

right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

## C. Supervised Release

### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 3-year term of supervised release.

### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D.    Fines**

The parties have no agreement as to a fine.

**E.    Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense. The parties have agreed that restitution is as follows, and shall be joint and several with defendants Daoud Faraj and Houda Bazzi:

- Medicare: $5,616,327.41

- Blue Care Network: $26,931.11

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the

purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

**F.   Forfeiture**

Pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), the defendant agrees to forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to the defendant's violation of 18 U.S.C. §§ 1349 and 1957, as charged in the Indictment, including but not limited to the following:

- Real property located at 357 12th Avenue, Indian Rocks Beach, Florida 33785

- Three Hundred Fifty-Five Thousand Six Hundred Fifty-Two Dollars and Twenty-Four Cents ($355,652.24) in lieu of real property located at 236 Apex Drive, Pontiac, Michigan 48341

- Three Hundred Sixteen Thousand Eight Hundred Eighty-Nine Dollars and Thirty-One Cents ($316,889.31) in Funds from Flagstar Bank Account No. 143158253, in the name of SMA Patient Care, LLC Wholesaler

- One Hundred Thirteen Thousand Two Hundred Ninety-Two Dollars and Sixty-Two Cents ($113,292.62) in Funds from Flagstar Bank Account No. 118559270, in the name of SMA Patient Care, LLC DBA Somerset Specialty Pharmacy Rochester Hills, LLC

- Grey 2021 Mercedes-Benz E 63; VIN W1KZF8KB6MA932583, Florida Title No. 141957479, License Plate No. QLRP66, registered in the name of Defendant Samer Nabil Youssef and YGZ Enterprises, LLC

- Black 2021 Jeep Wrangler RUBICON; VIN 1C4JJXSJ1MW634145, Florida Title No. 143797097, License Plate No. NYPL65, registered in the name of Defendant Samer Nabil Youssef

- 2022 40' 400 Sport Cruiser, possessing Hull Number SHF40119H122, Florida Title No. 146978808

(the "Subject Property").

The defendant also agrees, pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, to the entry of a personal forfeiture money judgment against him in favor of the United States in the amount of $11.9 million, which represents the amount of proceeds the defendant obtained or derived, directly or indirectly, from his violation of 18 U.S.C. §§ 1349 and 1957. The amount owed by the defendant on the

money judgment will be reduced by the final amounts forfeited to the United States.

The defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of the defendant. To satisfy the money judgment, the defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, containing the above referenced forfeiture of proceeds and the forfeiture money judgment, upon application by the United States at, or any time before, his sentencing in this case. The defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the government. The defendant agrees that the forfeiture order will be final and effective as to him upon entry by the Court.

The defendant will cooperate with in the government as requested by the government in connection with the government's efforts to

identify, locate, seize, and forfeit property that is subject to forfeiture under this agreement. The defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, property that is forfeitable to the United States under this agreement and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture. If any other person or entity has any interest in such property, the defendant will provide the government with the name and address of the person or entity that has an interest in, and/or possession of, the asset, and assist the government in obtaining a release of interest from any such other person or entity.

The defendant waives his right to have a jury determine the forfeitability of his interest in the above identified property as provided by Fed. R. Crim. P. 32.2(b)(5).

The defendant waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the

forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and/or forfeiture of property covered by this Plea Agreement.

The defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Upon entry by the Court of an Order of Restitution as part of the Judgment of Conviction in this criminal case and the forfeiture of any specific assets in this case becoming final, the United States Attorney's Office for the Eastern District of Michigan agrees to prepare a Request for Restoration of Forfeited Assets to Known Victim(s). The Request for Restoration will be submitted to the Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section (MLARS) for

determination. Defendant acknowledges that no representation has been made to him, however, as to the outcome of such a Request for Restoration, and understands that the MLARS may grant the Request for Restoration, may grant in-part the Request for Restoration, or may deny the Request for Restoration. Defendant expressly acknowledges that the Request for Restoration may be denied and that no representations have been made to him by or on behalf of the United States Attorney's Office or the Department of Justice as to the likelihood that such a Request will or would be granted.

### G.   Special Assessment

The defendant understands that he will be required to pay a special assessment of $200, due immediately upon sentencing.

## 11.   Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guideline range as determined by the Court (or any applicable mandatory minimum, whichever is greater).

### 12.   Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

### 13.   Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges

against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**14.    Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 15.   Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 16.   Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**17.   Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00p.m. on April 8, 2024. The government may withdraw from this agreement at any time before the defendant pleads guilty.

|  |  |
|---|---|
|  | Dawn N. Ison<br>United States Attorney |
| _____ | _____ |
| Mark Chasteen<br>Chief, White Collar Crime Unit<br>Assistant United States Attorney | Andrew J. Lievense<br>Assistant United States Attorney |

Dated: April 8, 2024

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

|  |  |
|---|---|
| _____ | Samer Youssef |
| Doraid Elder<br>Attorney for Defendant | Samer Youssef<br>Defendant |

Dated: 4/7/23