UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case Number 23-20431

v.                                                   Honorable David M. Lawson

SAMER YOUSSEF,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART GOVERNMENT'S MOTION FOR INTERLOCUTORY SALE OF VESSEL SUBJECT TO FORFEITURE AND SETTING SALE CONDITIONS

    The indictment in this case charging defendant Samer Youssef with health care fraud and money laundering also contains forfeiture allegations. One item the government seized as alleged proceeds derived from the criminal activity is a yacht, which currently is in United States Marshals Service custody. The government filed a motion (styled as an "application") for interlocutory sale of the vessel. Youssef did not object to the sale in principle, but he disagreed with the government's proposed sale procedures, which vests significant discretion in the Marshals Service. He argued that the vessel should be sold through a broker, a method which, he believed, would fetch a higher price. The Court held a hearing on the government's motion on March 28, 2024, at the conclusion of which the Court allowed Youssef to have access to the vessel, to obtain an appraisal by an expert of his choosing, and to propose a disposition plan.

    On May 1, 2024, Youssef pleaded guilty to one count of health care fraud (18 U.S.C. § 1349) and one count of money laundering (18 U.S.C. § 1357). During the plea hearing, the Court inquired about the status of the government's application for an order of interlocutory sale of Youssef's vessel. Youssef's attorney stated that the defendant no longer intended to seek an appraisal of the vessel and had no objection to an interlocutory sale, provided that the Court set a

reserve price. The government opposed the defendant's request, and the Court asked for supplemental briefs, which have been filed.

Youssef does not contest the Court's authority to order a sale of the vessel at this stage of the case, but he argues that the Court should set a reserve price of approximately $373,000, which represents the value of the vessel as determined by the government's appraiser. He argues that this value would ensure that the government's proposed auction would proceed in a "commercially feasible" means, conforming with 21 U.S.C. § 853(h)'s command. He also asks — presumably in the alternative — that the government be required to seek Court approval of a sale at a price below the appraised value to prevent a "fire sale" of the vessel.

The government argues that Youssef's failure to acquiesce to its proposed sales terms amounts to a breach of his plea agreement, which requires that he cooperate with the government's efforts with dispose of forfeitable property. That argument does not reflect an honest construction of the plea agreement. In that agreement, Youssef agreed to cooperate with the government's efforts "to identify, locate, seize, and forfeit" the property that could be subject to forfeiture. ECF No. 68, PageID.268-69. It does not require him to roll over on any government proposal to liquidate personal property at any price. And the plea agreement also suggests that the forfeited property could be used to offset Youssef's substantial restitution obligation, *id.* at PageID.270-71, so it would behoove him and the government alike to maximize the proceeds from the sale of the vessel.

The government also balks at Youssef's suggestion of setting the reserve price at the appraised value, arguing that it would not foster a competitive auction because a bidder could only pay market price or more. The government does acknowledge, though, that the standard procedure of its yacht broker, National Liquidators, is to set a reserve price at 75 percent of a vessel's "value."

If a reserve price is not achieved, the vessel would be relisted and eventually would be re-appraised if it still has not sold.

The Court's authority to order the interlocutory sale of property subject to criminal forfeiture is derived, among other sources, from 21 U.S.C. § 853(e), which permits a court to "enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take *any other action* to preserve the availability" of property subject to forfeiture. 21 U.S.C. § 853(e)(1) (emphasis added). This authority is triggered upon the filing of an indictment charging a violation for which criminal forfeiture may be ordered, as here, and alleging that the property with respect to which the order is sought would, in the event the defendant is convicted, be subject to forfeiture. *Id.* § 853(e)(1)(A); *see also United States v. King*, No. 10-122, 2010 WL 4739791, at *1 (S.D.N.Y. Nov. 12, 2010). "Courts have interpreted the statute's grant of authority . . . as a flexible grant including the authority to order the interlocutory sale of property when necessary to preserve the property's equity or value." *United States v. Johnston*, No. 13-5181, 2013 WL 5775250, at *5 (E.D. Ky. Sept. 26, 2013), *report and recommendation adopted sub nom. United States v. Woodland Dream*, No. 13-279, 2013 WL 5775298 (E.D. Ky. Oct. 24, 2013).

In addition, the Federal Rules of Criminal Procedure's forfeiture provisions also provide authority for the court to conduct interlocutory sales. *United States v. Guzman*, No. 08-00023, 2013 WL 12228400, at *2 (M.D. Tenn. Oct. 7, 2013) (applying both section 853 and the forfeiture provisions of the Federal Rules); *see also King*, 2010 WL 4739791, at *1 (same). Rule 32.2(b)(7) states that a district court, "*at any time* before entry of a final forfeiture order," may order an interlocutory sale of alleged forfeitable property "in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure." Fed. R. Crim. P. 32.2(b)(7) (emphasis added). Of particular relevance here, interlocutory sales are permitted when "the expense of keeping the property is

excessive or is disproportionate to its fair market value." Fed. R. Civ. P. Supp. G(7)(b)(1)(B). The government has stated, and the defendant does not dispute, that the vessel is in drydock storage incurring monthly storage expenses; and modest repairs ($3,650 to address dock rash on the hull, an acid wash to remove hard water stains, and routine service on all three motors) likely would be required to make the vessel seaworthy and more attractive to a buyer.

The Court has "considerable discretion" to order a sale of property subject to forfeiture and to prescribe its terms. *United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009). Such sales generally are "governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures." Fed. R. Civ. P. Supp. G(7)(b)(iii). Section 2004 requires that any personal property sold by order of a court be conducted in accordance with the provisions of section 2001, "unless the court orders otherwise." 28 U.S.C. § 2004; *Glander Int'l Bunkering Inc. v. M/V TERESA*, 586 F. Supp. 3d 189, 198 (E.D.N.Y. 2022). Section 2001, in general, requires a public sale "upon such terms and conditions as the court directs." 28 U.S.C. § 2001(a). However, the court may order a private sale, after a hearing, "if it finds that the best interests of the estate will be conserved thereby." *Id.* § 2001(b).

Courts ordering interlocutory sales frequently include a reserve (or minimum) price as part of the sale conditions. *See, e.g.*, *United States v. $510,910.00 in United States Currency*, No. 18-1683, 2020 WL 3840502, at *2 (S.D. Ill. July 8, 2020). The question then becomes what reserve price is appropriate. Youssef prefers that the reserve price be set at approximately $373,000, which is close to the appraised value of the vessel. The government objects, noting that absent Court intervention, the yacht broker's default practice is to set a reserve price at 75 percent of a vessel's "value." That "value," however, is subject to some dispute. Youssef took the position initially

that the yacht was worth $550,000. But he has not backed up that assertion with an appraisal of his own, despite being given the opportunity to do so.

A reserve price of 75% of the only actual appraisal available is a reasonable approach to the sale, tempered, however, by the requirement that the government must seek and obtain Court approval before finalizing any sale, before which the defendant would be allowed to object to the sale price.

Several factors suggest that setting the reserve at 75 percent of the vessel's appraised value would be appropriate. *First*, that figure comports with the practice of the government's yacht broker, which presumably has experience with and an interest in maximizing sales proceeds. *Second*, this figure likely will permit the sale to reach a conclusion expeditiously. Although it is possible that this could result in a sale that undershoots the vessel's fair market value somewhat, there are costs to further delaying the sale that could diminish the net yield. The vessel continues to accumulate storage fees, which reduce the amount that ultimately will be recovered. The vessel also may depreciate in value over time; the government's appraisal was made in August 2023. *Third*, this reserve price is consistent with the practice of other courts that have ordered interlocutory sales. *See, e.g.*, *United States v. $510,910.00 in United States Currency*, 2020 WL 3840502, at *2 (setting reserve price of recreational vehicle at "75 percent of the retail value"); *United States v. One 2005 Lagoon 440 Sailing Catamaran Named Bohemian Rhapsody*, No. 13-9262, 2017 WL 10573808, at *4 (C.D. Cal. Sept. 22, 2017) (setting lowest acceptable bid on a vessel at 66 percent of the National Automobile Dealers Association ("NADA") list price at the time of sale); *United States v. One 2014 Rolls Royce Phantom Auto.*, 461 F. Supp. 3d 1, 2-3 (D.D.C. 2018) (setting reserve price at government's estimate of fair market value where claimant contended the value was approximately $10,000 to $20,000 higher).

The government's appraiser and selling agent, National Liquidators, estimated the vessel's NADA value at $373,950 and "NL Consensus Value" as $370,000. ECF No. 55, PageID.190. Presumably, the latter is National Liquidator's own estimate of the vessel's worth, although the government does not specify why it differs from the NADA value. (National Liquidators did find that the vessel required approximately $3,650 in maintenance, but this figure does not explain completely the discrepancy.) In any event, taking 75 percent of the NADA appraisal yields $280,462.50 — a figure substantially below either appraisal, but likely sufficient to promote a robust auction. That reserve price is reasonable under all circumstances at present.

Accordingly, it is **ORDERED** that the government's motion for an interlocutory sale of seized property, to-wit: a 2022 40-foot Schaefer 400 Sport vessel, bearing hull number SHF40119H122 and Florida Title No. 146978808 (the "Vessel"), (ECF No. 55) is **GRANTED IN PART**.

It is further **ORDERED** that the government may proceed with its efforts to sell the Vessel on the following terms:

> a) The Vessel will be sold in the most commercially feasible manner as determined by the government's appraiser and selling agent, National Liquidators, under the supervision of the United States Marshal Service (USMS) for the Middle District of Florida under the terms of this Order;
>
> b) The USMS and its delegate, National Liquidators, may reject any offers to purchase the Vessel for any reason, where it determines that the offer is being made by, on behalf of, or in conjunction with a person or entity involved in the criminal activity alleged in these criminal proceedings as the basis for forfeiture;
>
> c) The selling agent may not entertain any offer that is less than $280,462.50;
>
> d) Before any sale is finalized, the government must seek and obtain permission from the Court by filing an appropriate motion. The defendant may oppose the motion by filing an appropriate response within 14 days after the motion is filed. Final sale will be subject to Court approval;

e)  After the sale of the Vessel is finalized, the net sale proceeds shall be remitted to the custody and control of the USMS or its delegate and shall be deposited into the Department of Justice Seized Asset Deposit Fund, an interest bearing account;

f) The net proceeds from the sale of the Vessel will include all money realized from the sale of the property, less all reasonable costs incurred by the USMS or its delegate in connection with the storage, maintenance, repair, marketing, and sale of the Vessel;

g)  The net proceeds realized from the sale of the Vessel shall constitute "substitute res" for the Vessel in this case and subject to any preliminary and final order of forfeiture entered in the case; and

h) An accounting of the proceeds attributable to the Vessel shall be maintained by the USMS or its delegate and furnished to the Court.

                                                                            s/David M. Lawson
                                                                            DAVID M. LAWSON
                                                                            United States District Judge

Dated:   May 17, 2024